UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| GALE E. TENEFF,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>    Defendant. | No. CV-06-295-MWL<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS |

BEFORE THE COURT are cross-motions for summary judgment noted for hearing without oral argument on April 30, 2007. (Ct. Rec. 10, 13). Attorney Maureen J. Rosette represents Plaintiff; Special Assistant United States Attorney Thomas M. Elsberry represents the Commissioner of Social Security ("Commissioner"). Plaintiff filed a reply brief on April 23, 2007. (Ct. Rec. 15). The parties have consented to proceed before a magistrate judge. (Ct. Rec. 5.) After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment and **REMANDS** the matter to the Commissioner for further proceedings. (Ct. Rec. 10.) Defendant's Motion for Summary Judgment is **DENIED.** (Ct. Rec. 13.)

**JURISDICTION**

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on April 29, 2003, alleging an onset date of February 1, 1991. (Administrative Record ("AR") 75-77). The application was denied initially and on reconsideration. (AR 33-36, 40-41.) for the late filing. (AR

17).  Administrative Law Judge ("ALJ") Mary Bennett Reed found that although plaintiff's request for a hearing was untimely filed, she established good cause for the late filing.  (AR 17).  A  hearing was held on December 6, 2005.  (AR 357-422).  Plaintiff's last insured date was June 30, 1995; therefore, she had to show that she was disabled on or before that date.  (AR 17).  Plaintiff, medical experts Daniel Girzadas, M.D., and Allen Bostwick, M.D., and vocational expert Tom Moreland, testified.  (AR 357-422).  On May 8, 2006, the ALJ issued a decision finding that Plaintiff was not disabled. (AR 17-27.)  The Appeals Council denied a request for review on September 22, 2006.  (AR 6- 8).  Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on October 18, 2006. (Ct. Rec. 1).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both Plaintiff and the Commissioner, and will only be summarized here.

Plaintiff was 51 years old on the date of the hearing, and 40 years old on the date last insured.  (AR 18, 385).  She has a high school education and three years of college but no degree. (AR 96, 385-386).  Plaintiff earned a Surgical Technologist Certificate in 1987 or 1988.  (AR 96, 386, 389).  She has worked as a surgical technician and as a laboratory aide.  (AR 386-390, 417-418).

Plaintiff alleges disability due to mental and musculoskeletal impairments.  (AR 18).

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment   which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides that a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a Plaintiff is not only unable to do previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other

substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).   Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work which was performed in the past. If a Plaintiff is able to perform previous work, that Plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, Plaintiff's residual functional capacity ("RFC") assessment is considered. If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of Plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents the performance of previous work. The burden then

shifts, at step five, to the Commissioner to show that (1) Plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or

nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

### ALJ'S FINDINGS

The ALJ found at the onset that Plaintiff meets the nondisability requirements and is insured for disability benefits through June 30, 1995. (AR 17, 20).  The ALJ found at step one that plaintiff's earnings record does not show income after 1991, although there are inconsistent reports of plaintiff working in 2002 and 2004. (AR 18).  The ALJ found it unnecessary to further develop the record with respect to this issue because she found plaintiff "not disabled" on other grounds. (AR 18-19).  Accordingly, the ALJ found at step one that plaintiff has not engaged in substantial gainful activity during any time at issue. (AR 18-19, 26).  At step two, the ALJ found that plaintiff failed to establish that she suffered from a severe impairment or combination of impairments prior to July 1, 1995, or during her insured period. (AR 26).  Because the ALJ found at step two that plaintiff suffered from no severe impairment, she was not required to proceed to steps three through five of the sequential evaluation process.  Accordingly, at step two, the ALJ found that plaintiff was not disabled within the meaning of the Social Security Act. (AR 25-26).

### ISSUES

Plaintiff contends that the Commissioner erred as a matter of law.  Specifically, she argues that the ALJ erred by finding at step two that she suffers from no severe physical or mental impairment.  Plaintiff alleges that the error was caused by the ALJ's failure to give specific and legitimate reasons supported by substantial evidence for rejecting the opinions of her treating physicians, Kirk Rowbotham, M.D., Kenneth L. DeSeve, Ph.D., and psychiatrist Robert Baxley, M.D.  (Ct. Rec. 11 at 9-16).

The Commissioner opposes the Plaintiff's motion for summary judgment and asks that the ALJ's decision be affirmed. (Ct. Rec. 14 at 14-15).

### DISCUSSION

**A.  Weighing Medical Evidence**

In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory

findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929. Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of symptoms. *Bunnell v. Sullivan*, 947, F. 2d 341, 345 (9th Cr. 1991).

A treating or examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F. 3d 587, 592 (9th Cir. 2004). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester v. Chater*, 81 F. 3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject an opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F. 3d 1453, 1463 (9th Cir. 1995). In addition to medical reports in the record, the analysis and opinion of a non-examining medical expert selected by an ALJ may be helpful to the adjudication. *Andrews v. Shalala*, 53 F. 3d 1035, 1041 (9th Cir. 1995) (*citing Magallanes v. Bowen*, 881 F. 2d 747, 753 (9th Cir. 1989). Testimony of a medical expert may serve as substantial evidence when supported by other evidence in the record. *Id.*

Plaintiff contends that the ALJ erred by rejecting the opinions of treating physicians and by finding at step two that she suffers from no severe impairments. (Ct. Rec. 11 at 9-16). The Commissioner responds that the ALJ properly weighed the medical evidence and her finding at step two should be affirmed. (Ct. Rec. 14 at 1-14).

Treating doctor Kirk Rowbotham, M.D., saw Plaintiff on April 19, 1994, after referral by Marynell Meyer, M.D., for multiple concerns, primarily pain in her hands. (AR 135). Plaintiff reported that her hands were stiff and sore in the morning but improved with activity; her grip "has slightly decreased"; she experienced rare intermittent tingling, and cold aggravated the condition. (AR 135). Dr. Rowbotham notes that plaintiff initially had an appointment in January but rescheduled because "she was getting better." (AR 135). Plaintiff reported abdominal distress and a previous diagnosis of colitis. (AR 135). She described her abdominal problems as intermittent

cramping pain with alternating diarrhea and constipation worsened by stress and not eating an evening meal. (AR 135). Plaintiff reported that a previous lower GI series was negative. (AR 135). Dr. Rowbotham notes plaintiff described "a good deal of marital distress and depression . . . she does note she feels depressed, that she has sleep disturbance, anhedonia, decreased concentration, fatigue and memory loss" but denied feeling suicidal. (AR 135). Plaintiff's past medical history included mild anemia and irritable bowel syndrome ("IBS"). (AR 135). Dr. Rowbotham suspected inflammatory osteoarthritis, currently relatively mild, but did not rule out other connective tissue diseases. (AR 135). He assessed IBS, reasonably controlled, and depression, for which he prescribed paxil. Dr. Rowbotham ordered additional testing to rule out connective tissue disease and asked plaintiff to follow up in a month. (AR 135).

On May 4, 1994, Dr. Rowbotham saw plaintiff for abdominal pain following a blow to the stomach by her husband two days earlier. (AR 136). She reported that lodine was helping her hand pain but paxil made her tired and she stopped taking it. (AR 136). On exam Dr. Rowbotham noted plaintiff's abdomen was diffusely tender in the periumbilical region. He assessed abdominal pain secondary to the blow she sustained which was slowly improving, and prescribed vicodin for severe abdominal pain as needed. (AR 136-137). Dr. Rowbotham noted that plaintiff's osteoarthritis was much improved with anti-inflammatories. (AR 136). He again assessed depression and prescribed paxil at a half tablet daily. (AR 137). Five days later plaintiff reported paxil again made her drowsy; Dr. Rowbotham gave her samples of zoloft. (AR 137).

June 1, 1994, Dr. Rowbotham notes that plaintiff was beaten by her husband and seen in the emergency room. (AR 137). On July 11, 1994, the doctor notes that plaintiff was doing better and was off of all medication. (AR 137). She reported having breast surgery in California with residual associated pain. (AR 137). "Other than her marital situation she is doing well." (AR 137). Dr. Rowbotham assessed arthritis, symptomatically resolved. (AR 138). Plaintiff was directed to return in April. (AR 138).

Plaintiff returned September 2, 1994 with a flare of joint pain "primarily affecting her hands and all joints in the hand as well as her feet." (AR 138). Plaintiff indicated that the pain had been gradually worsening and she felt this was due to increased activity and stress. (AR 138).

Dr. Rowbotham noted plaintiff denied being suicidal but asked for something to help with her depression. (AR 138). Trilisate was prescribed for pain and zoloft for depression. (AR 138).

Plaintiff next saw Dr. Rowbotham on December 2, 1994, for a sore right elbow sustained about two months earlier, as well as for intermittent aches and pains in her joints, hands and feet. (AR 140). On exam some mild synovial thickening in the PIP joints of both hands was noted. (AR 140). Plaintiff was directed to continue with trilisate as needed for pain, and with zoloft as needed. (AR 140).

Dr. Rowbotham saw plaintiff on July 20, 1995, about three weeks after her last insured date, for a TMJ[1] flare. (AR 140). He noted jaw tenderness and prescribed ativan. (AR 140). On August 15, 1996, Dr. Rowbotham saw plaintiff who reported that her husband had twisted her arm and jerked her neck around. (AR 244). Plaintiff complained that she was stiff and sore. Dr. Rowbotham noted that she appeared fatigued but in no acute distress. (AR 244). On exam he noted some muscle tenderness in plaintiff's trapezius and cervical muscles in her upper back and neck areas, and prescribed robaxin for muscle spasms. (AR 244). Plaintiff returned on December 26, 1996, describing difficulty the past week with hand pain and intermittent flares of arthritis in her hands; however, she said at the appointment that it was largely resolved at that time. (AR 245).

On October 24, 2005, Dr. Rowbotham wrote that he saw plaintiff from April of 1994 through December of 1996 for multiple complaints related to arthritis and joint pains. (AR 298). He opined that during this time, plaintiff would only have been able to perform light duty work. (AR 298).

Contemporaneously with Dr. Rowbotham's treatment, plaintiff sought care at First Care Medical Center. Prior to her date of last insured, plaintiff was seen at First Care on June 24, 1995. (AR 152). She described scalp pain caused by her husband pulling her hair. (AR 152). Plaintiff stated that her husband had hit her at least 20 times before she made a report. (AR 152). On this occasion, plaintiff said that her husband pulled her by the hair and shoved her backwards. Sitting increased her hip and back pain, especially in her right hip. (AR 152). Edema and erythima along

---

[1]Temporomandibular joint syndrome.

plaintiff's front parietal area was noted, as were contusions. (AR 152). Pain medication was prescribed, to be taken as needed. (AR 152).

Plaintiff was seen again on May 10, 1996 (about ten and a half months after her last insured date), for a stiff neck after her husband pulled her hair and threw her against a wall. (AR 154). Pain medication was prescribed. (AR 154). Plaintiff was seen on May 25 and May 29, 1996, after her husband pushed her into a post and she suffered a probable concussion. (AR 155, 153). She suffered headache, tiredness, and some tenderness at the base of the occiput. (AR 155). On August 28, 1997, plaintiff was seen after her husband hit her on the back of the head and pulled her hair. (AR 156). Cervical strain was assessed, with tenderness and mild spasm noted. (AR 156).

Plaintiff alleges that the ALJ failed to properly credit the opinion of treating physician Dr. Rowbotham. (Ct. Rec. 11 at 10-11). The Commissioner responds that the ALJ properly rejected this opinion because: (1) it was not supported by Dr. Rowbotham's clinic or treatment notes; (2) there is no evidence that Dr. Rowbotham performed any diagnostic testing or referred plaintiff to any specialists; (3) the doctor's notes do not show that plaintiff presented with any ongoing, persisting complaints, and (4) plaintiff's complaints of acute symptoms resolved quickly or did not require follow-up. (Ct. Rec. 14 at 9).

The ALJ stated:

> Dr. Rowbotham's assessment [in October of 2005] is not supported by his clinic notes or by his treatment of the claimant. His clinic notes do not support complaints of functional limitations by the claimant, and his assessment is not consistent with the claimant's contemporaneous activities of daily living. Dr. Rowbotham's conclusions concerning the claimant's condition prior to July of 1995 are not persuasive.
>
> The medical evidence of record establishes that, prior to July of 1995, the claimant presented with the normal assortment of acute complaints. The claimant considered her health to be good, other than her marital situation. See Exhibits 1F, 2F, 3F, and 4F. Commencing in May of 1994, the claimant also presented with acute musculoskeletal pain related to physical abuse by her husband. See Exhibits 3F and 5F. Prior to July of 1995, the claimant did not present with any ongoing complaints or persisting symptoms. She did not require or undergo orthopedic or psychological evaluation. She did not report any functional restrictions due to any psychological or physical condition or impairment. Current opinions concerning the claimant's previous condition are unsupported by clinical findings, inconsistent with the claimant's activities of daily living, and are suspect. As the opinions are not supported by the evidence of record or by clinic notes or findings, they are purely speculative and not persuasive.

(AR 24-25).

- 9 -

The ALJ went on to adopt the findings of the agency physicians.

An impairment or combination of impairments may be found "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb. Barnhart*, 433 F. 3d 683, 686-687 (9th Cir. 2005)(citing *Smolen v. Chater*, 80 F. 3d 1273, 1290 (9th Cir. 1996); *see Yuckert v. Bowen*, 841 F. 2d 303, 306 (9th Cir. 1988). If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step. S.S.R. No. 85-28 (1985). Step two, then, is "a de minimus screening device [used] to dispose of groundless claims," *Smolen*, 80 F. 3d at 1290, and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is "clearly established by medical evidence." S.S.R. 85-28. The question on review is whether the ALJ had substantial evidence to find that the medical evidence clearly established that the claimant did not have a medically severe impairment or combination of impairments. *Webb*, 433 F. 3d at 687; *see also Yuckert*, 841 F. 2d at 306.

As noted, Dr. Rowbotham diagnosed plaintiff with depression and prescribed antidepressants. He noted her multiple problems with arthritis and joint pain. Records from First Care Medical Center further document plaintiff's pain and physical injuries. Although their records relate largely to plaintiff's condition after her date of last insured, the records of both Drs. DeSeve and Baxley tend to support, rather than contradict, finding a severe psychological impairment.[2] The medical expert, Allen Bostwick, Ph.D., testified that plaintiff "was probably worse in the mid-1990's . . . because the PTSD was, and the abuse, was more active at that time." (AR 377-378). The only evidence the ALJ points to as contrary to the opinion of treating Dr. Rowbotham is plaintiff's activities of daily living: a vacation to Mexico and a trip to California to

---

[2]Dr. DeSeve diagnosed plaintiff with PTSD and Adult Adjustment Disorder, with anxiety and depression., in June of 1998. (AR 162). He began treating plaintiff twice a week beginning in August of 1997. (AR 162). Dr. DeSeve opined that she was socially introverted and withdrawn and "does not have the capacity to sustain employable concentration on anything but the most menial tasks." (AR 163). Dr. Baxley treated plaintiff from September of 2004 to March of 2005. (AR 235). Dr. Baxley opined that "[t]he progress notes of Dr. Rowbotham support that Gale was suffering from a serious major depressive illness in April of 1994." (AR 235). Based on both his treatment and review of plaintiff's records, Dr. Baxley opined that plaintiff was disabled from her PTSD and major depression prior to 1995. (AR 236).

- 10 -

replace breast implants. It is the opinion of the undersigned that the ALJ has failed at step two to clearly establish by medical evidence that plaintiff does not suffer from a severe impairment or combination of impairments sufficient to dispose of her claim at step two of the sequential evaluation process.

Plaintiff also alleges that the ALJ failed to properly credit the opinion of treating physicians Kenneth L. DeSeve, Ph.D., and Robert S. Baxley, M.D. (Ct. Rec. 11 at 12-15). The Commissioner responds that the ALJ properly discredited Dr. DeSeve's opinion because it was unsupported by clinical findings, psychological tests, or corroborating statements. (Ct. Rec. 14 at 11). In addition, the Commissioner asserts that the ALJ also properly discredited the opinion as based on plaintiff's unreliable self-report. (Ct. Rec. 14 at 12). With respect to Dr. Baxley's opinion, the Commissioner responds that the ALJ properly discredited this opinion because it was based primarily on plaintiff's unreliable self-reporting, was not supported by Dr. Baxley's findings on clinical examination, was not compatible with plaintiff's activities of daily living, and was unsupported by any psychological or psychiatric testing. (Ct. Rec. 14 at 12-13).

Although the medical record is not entirely clear, it is the opinion of the undersigned that the record includes medical evidence of problems caused by depression and by physical problems, alone or in combination, sufficient to pass the de minimus threshold of step two. *See Smollen*, 80 F. 3d at 1290. The opinions of several treating physicians that plaintiff suffers a severe impairment is generally sufficient to meet the screening function of step two (dismissing groundless claims); assessing the plaintiff's credibility to determine the existence of a severe impairment, as the ALJ did at step two, is improper. Even the testifying medical expert, Daniel Girzadaz, M.D., opined that plaintiff's cervical spine impairment equaled Listing 1.04 in 1999; he believed that the bone scan could be backdated 2 to 3 years, meaning that plaintiff's spine impairment equaled the Listing possibly as early as 1996. (AR 366). Although this opinion is evidence of an impairment equaling a Listing after the date of last insured (June 30, 1995), it does not clearly establish that plaintiff suffered only a de minimus impairment in her ability to work prior to 1996. Though plaintiff ultimately bears the burden of establishing her disability, the ALJ has an affirmative duty to supplement plaintiff's medical record (perhaps with psychological testing), to the extent the record was incomplete, before rejecting this impairment at so early a

stage in the analysis, particularly in light of the opinions of three treating physicians that plaintiff suffers severe impairments likely to interfere with employment. "In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Webb*, 433 F. 3d at 687, *citing Brown v. Heckler*, 713 F. 2d 441, 443 (9th Cir. 1983) (per curiam).

The ALJ's finding at step two that plaintiff suffers from no severe impairments is not clearly established by medical evidence. Accordingly, the case must be remanded for additional proceedings to correct the legal error.

## CONCLUSION

Having reviewed the record and the ALJ's conclusions, this court finds that the ALJ's decision at step two that plaintiff suffers from no severe impairments is not clearly established by the medical evidence. Because the ALJ committed this error at step two, the case is remanded for further proceedings to determine whether plaintiff is disabled.

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 10)** is **GRANTED.** The matter is remanded to the Commissioner of Social Security for further proceedings consistent with the this decision and sentence four of 42 U.S.C. §§ 405(g).

2. Defendant's Motion for Summary Judgment **(Ct. Rec. 13)** is **DENIED.**

The District Court Executive is directed to file this Order, provide copies to counsel for Plaintiff and Defendant, enter judgment in favor of Plaintiff, and **CLOSE** this file.

DATED this 24th day of May, 2007.


/s/ Michael W. Leavitt

MICHAEL W. LEAVITT
UNITED STATES MAGISTRATE JUDGE